| | | |
|---|---|---|
| OSAMA "SAM" ODEH, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 4:07-CV-0411-L |
| | ) | |
| DAVID BYRNES, et al., | ) | |
| Defendants. | ) | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (c), and the District court's order filed on September 10, 2007, this case has been referred to the United States Magistrate Judge for pre-trial management. The findings, conclusions and recommendation of the Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS:

Type of Case: This is a fee paid, *pro se* civil rights complaint brought pursuant to *Bivens v. Six Unknown Named Agents of the Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999 (1971).

Parties: Plaintiff Osama "Sam" Odeh ("Odeh") resides in Arlington, Texas.

Defendants are District Court Clerk Karen Mitchell, U.S. District Judges A. Joe Fish and Terry Means, Deputy Clerk Janet Baggett, Fifth Circuit Judges Grady E. Jolly and Carolyn Dineen King, Magistrate Judge Charles Bleil, Fifth Circuit Clerk Charles Fulbruge, Fifth Circuit Deputy Clerk Allison Lopez, U.S. Supreme Court Clerk William Suter and Deputy Clerk Jeffrey Atkins, U.S. Attorney Richard Roper, and Assistant U.S. Attorneys Angela Lee Henson and

Michael Worley.  Process was issued in this case.[1]

Statement of Facts:  Odeh has an extensive and lengthy filing history stemming from his criminal conviction and the clerical errors initially made by the clerk's office in docketing his petition for writ of coram nobis (WCN petition).  He has been sanctioned in this court as well as the Fifth Circuit Court of Appeals for his vexatious litigation and contumacious conduct.

Odeh and his family engaged in the business of exporting used vehicles to Kuwait.  In 1996, Odeh and his family were prosecuted for violating federal export laws.  *United States v. Sport Cars Center Inc., et al.*, 4:97cr0105-T (N.D. Tex.).  Odeh pled guilty and received a five-year probated sentence.  His probation was later revoked resulting in eleven months of incarceration.  In 2004, after his release, Odeh filed his WCN petition.  Due to a clerical error, the clerk's office filed his petition as a separate civil action.  *See Odeh v. United States*, 4:04cv0436-Y (N.D. Tex.).  Magistrate Judge Bleil filed findings and conclusions recommending that the petition be denied.  *Id.*  On December 7, 2004, Judge Means acknowledged the clerical mistake and directed that the petition be docketed in the criminal case, where following *de novo* review, denied it on the merits on April 7, 2005.  Judge Means thereafter denied Odeh's motion to reconsider.  *Id.*  Odeh appealed.

The Fifth Circuit Court of Appeals dismissed Odeh's appeal as frivolous, imposed a $500 monetary sanction, and ordered the clerk to accept no further filings, including any attempt at further appellate review, in this or any appeals of original petitions filed in the future.  *See* No.

_____

[1]     Although case number 4:07-CV-0715-L was initially consolidated with this case, all Defendants named in 4:07-CV-0715-L -- Michael Mukasey, the Department of Justice, David Margolis, Jay Macklin, Donald DeGabrielle, and David Guerrera – were subsequently dismissed on the basis of Odeh's voluntary motion to dismiss.  *See* Feb. 26, 2008 Order (doc. #64), granting Odeh's voluntary motion to dismiss and stating that No. 4:07cv715-L would no longer be referred in the caption.

05-10764 (5th Cir. Jun 15 and Aug. 8, 2006 Orders). Odeh sought review by petition for writ of certiorari, which the U.S. Supreme Court denied on December 4, 2006. *See* No. 06-601. On January 22, 2007, the Supreme Court denied Odeh's motion for rehearing. *Id.* Being dissatisfied with the unfavorable disposition of his WCN petition, Odeh began filing civil actions in this court accusing an ever growing number of defendants (including federal judges, clerks of court, and Department of Justice employees) of generalized, multiple conspiracies, endless administrative misconduct, and violations of his constitutional rights.[2] All events are related, either directly or indirectly, to his federal criminal prosecution, the litigation of his WCN petition, and the litigation of subsequent cases complaining about the handling of his WCN petition. Odeh seeks to blame the federal defendants for everything that has or could possibly have happened in his prior cases. As one judge observed: "The complaints filed in "[Odeh's] cases read like tales spun from a conspiracy theorist's loom." *See Osama "Sam" Odeh v. United States Dep't of Justice*, No. 4:07cv0181-P, Order filed on Nov. 30, 2007 (Doc. #43).[3]

In the present case, Odeh continues his conspiracy theories and administrative misconduct claims previously litigated in 3:06cv225-N with respect to his WCN petition. He adds Karen Mitchell, clerk for the Northern District, as well as Fifth Circuit Judges, and U.S. Supreme Court employees, with whom he came into contact in connection with the appeal and petition for writ of certiorari stemming from the denial of his WCN petition. Odeh also alleges

---

[2]    Odeh's filing history discloses a pattern of suing judicial officers who rendered unfavorable rulings in a prior case. He also appears to name judicial officers as defendants in an effort to recuse the judges from presiding in subsequent cases.

[3]    *See* Complaints filed in civil action Nos. 4:06cv225-K, 4:06cv0246-A, 4:07cv181-P, 4:07cv270-P, 4:07cv683-M, 4:07cv696-P, 4:07cv715-L, 4:08cv0047-D, and 4:08cv0092-D.

Defendants violated his procedural due process rights in connection with the denial of his WCN petition and appeals. He seeks punitive damages against all defendants.

On February 1, 2008, Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), (2), (4), (5) and (6). Plaintiff filed his response, and Defendants filed their reply. Also pending at this time are Defendants' motion for sanctions, Plaintiff's motions for temporary restraining order, for default judgment, and to amend the complaint, and Plaintiff's numerous other motion, which are addressed in a separate order filed on this day.

On June 25, 2008, the undersigned filed an order setting a hearing for July 22, 2008, on Defendants' motions to dismiss and for sanctions, and Plaintiff's motion for leave to file second amended complaint. The parties were ordered to appear in person or through counsel at 9:30 a.m. Odeh objected to the order setting hearing. By order dated July 18, 2008, the court denied the objection, reiterating that the hearing would be held on July 22 at 9:30 a.m.

On July 22, 2008, at approximately 8:30 a.m., the magistrate judge's judicial assistant received a telephone call from a woman, identifying herself as Odeh's daughter, and was informed that Odeh would not be appearing at the 9:30 a.m. hearing due to illness. Given the fact that the notification was received less than one hour before the scheduled hearing, the court was unable to notify Defendants' counsel, Mr. Maule, who appeared only to be informed that the hearing had been cancelled due to Odeh's illness.[4]

Defendants' advisory to the court, in response to the June 25, 2008 order, informs that

---

[4] As a result of Odeh's non-appearance, the undersigned wrote him a letter on July 22, 2008, requesting information from his treating physician. Dr. Chuong's letter of July 29, 2008, raises serious questions as to whether Plaintiff's reported symptoms were such as to render it medically inadvisable to appear at the July 22 hearing. However, be that as it may, the magistrate judge concludes that the motions, which were scheduled for the July 22nd hearing, may be decided without the necessity of oral presentations.

those defendants, who moved for dismissal pursuant to Rule 12(b)(4) no longer seek dismissal on that basis. In addition, the records of the court reflect that subsequent to the filing of Defendants' motion to dismiss on February 1, 2008, any deficiencies in service of process have been corrected, rendering moot Defendants' motion based on Rule 12(b)(5).

Findings and Conclusions: The court addresses first the jurisdictional questions raised in Defendants' motion to dismiss – i.e., subject matter and personal jurisdiction. Alternatively, in the event the District Court were to conclude that it has subject matter jurisdiction over the Texas Defendants (Mitchell, Fish, Means, Bagget, King, Bleil, Roper, Henson, and Worley), the court addresses whether Odeh's First Amended Complaint fails to state a claim upon which relief can be granted. The Court next addresses Defendants' motion for sanction and lastly Plaintiff's motions for temporary restraining order, for default judgment and to amend the complaint.

A.     Defendants' Motion to Dismiss

1. Subject Matter Jurisdiction

Defendants have moved to dismiss under Rule 12(b)(1) arguing this court lacks subject matter jurisdiction over the First Amended Complaint because it raises patently frivolous procedural due process claims.

Federal courts are courts of limited jurisdiction. *Stockman v. Fed. Election Comm'n,* 138 F.3d 144, 151 (5th Cir.1998). A district court has federal question jurisdiction over all civil actions arising under the United States Constitution or federal law. 28 U.S.C.A. § 1331 (2007). To establish federal question jurisdiction, a plaintiff must sufficiently state a constitutional violation. *Murphy v. Inexco Oil Co.,* 611 F.2d 570, 573 (5th Cir.1980). The mere recitation of a violation does not suffice if "the contention is frivolous or patently without merit." *Id.*; *see also*

*Cuyahoga River Power Co. v. Northern Ohio Traction & Light Co.*, 252 U.S. 388, 397 (1920) (case "cannot be made in a federal court unless there be involved a federal question, and a federal question, not in mere form, but in substance, and not in mere assertion, but in essence and effect"); *Burgess v. Charlottesville Savings & Loan Ass'n,* 477 F.2d 40, 43-44 (4th Cir. 1973); *First Family Financial Services v. Mollett,* 2006 WL 695258, at *3 (E.D.Ky. Mar. 17, 2006) (mere recital or reference to a federal statute cannot confer federal question jurisdiction). If the constitutional provision invoked is "clearly immaterial and is invoked solely for the purpose of obtaining jurisdiction or if the claim is wholly insubstantial and frivolous," a court is without federal question jurisdiction. *Holland/Blue Streak v. Barthelemey,* 849 F.2d 987, 989 (5th Cir.1988).

The Due Process Clause of the Fifth Amendment prohibits States from depriving persons of "life, liberty, or property without due process of law." U.S. Const. amend. V. To assert a due process claim, a plaintiff must allege that he was deprived of a protected liberty interest without due process. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S. Ct. 2701 (1972). The liberty interests protected by the Due Process Clause may be either substantive or procedural in nature. *Id* at 570-572. Substantive due process protects certain fundamental liberty interests, including freedom of speech, religion, and association, as well as the right to privacy. *Washington v. Glucksberg,* 521 U .S. 702, 720 (1997). Procedural due process imposes certain rules on the Government when it seeks to deny or take away protected interests. *Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S. Ct. 893 (1976). Before being deprived of these interests, a party must be afforded notice and the opportunity to be heard "at a meaningful time and in a meaningful manner." *Id.* at 333. A court will look to see if the government actions comported with due process only after finding that a party has been deprived of a protected interest. *Amer. Mfrs.*

*Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 59, 119 S. Ct. 977 (1999).

Although the First Amended Complaint invokes the Due Process Clause and seeks to allege a protected property interest in "coram nobis," the post-incarceration analog of a writ of habeas corpus, Odeh's claims are so wholly insubstantial and patently frivolous that they cannot invoke this court's federal question jurisdiction. The WCN petition was reviewed *de novo* and rejected on three different occasions in the district court, and once on appeal. The ultimate denial of the WCN petition does not, in and of itself, constitute a deprivation of any constitutionally protected liberty interest. Insofar as Odeh couches his claims in terms of lost or denied access to the courts, his contentions are likewise frivolous. His suggestion that he has been denied his day in court is patently frivolous, as evidenced by the numerous cases he has filed in this court. Moreover, despite his repeated and meritless filings, the majority of his cases have been decided on their merits, and in some instances, subjected to appellate review as well.

Accordingly, the constitutional claims alleged in Odeh's First Amended Complaint are insubstantial and asserted merely in an effort to invoke federal question jurisdiction. Because alleged claims under the Due Process Clause are frivolous as a matter of law, Odeh cannot meet his burden to establish that the court has federal question jurisdiction over his claims. Therefore, Defendants' motion to dismiss for lack of subject matter jurisdiction should be granted.

2. <u>Personal Jurisdiction</u>

Defendants Fulbruge, Lopez, Jolly, King,[5] Suter and Atkins move to dismiss under Fed. R. Civ. P. 12(b)(2) claiming the court lacks personal jurisdiction over them. These Defendants either reside and/or work in Louisiana and Washington, D.C. When a nonresident defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction. *Lewis v. Fresne,* 252 F.3d 352, 358 (5th Cir. 2001). When no evidentiary hearing is held, the plaintiff is required to present a prima facie case for the exercise of personal jurisdiction over a defendant. *Panda Brandywine Corp. v. Potomac Elec. Power Co.,* 253 F.3d 865, 867-68 (5th Cir. 2001). In determining whether the plaintiff has made a prima facie case, the complaint's uncontradicted facts must be taken as true, and all factual conflicts must be resolved in the plaintiff's favor. *Id.*

Personal jurisdiction is proper only when (1) the Texas long arm statute provides a basis for personal jurisdiction, and (2) the exercise of jurisdiction is consistent with due process. *Revell v. Lidow,* 317 F.3d 467, 469 (5th Cir. 2002). The Texas long arm statute, Tex. Civ. Prac. & Rem. Code Ann. § 17.042, reaches to the limits of due process; the court therefore need only determine whether the exercise of personal jurisdiction over the non-resident defendants in this case is consistent with due process. *Guardian Royal Exch. Assurance v. English China Clays P.L.C.,* 815 S.W.2d 223, 226 (Tex. 1991).

"Exercising personal jurisdiction over a nonresident defendant is compatible with due process when '(1) the defendant has purposefully availed himself of the benefits and protections

---

[5]    Although the Fifth Circuit, on which Judge King sits as a judge, is headquartered in New Orleans, Louisiana, she maintains chambers in Houston, and is a resident of the State of Texas. Therefore, Odeh's claims against her should be addressed together with those alleged against Defendants who are also residents of the State of Texas.

of the forum state by establishing minimum contacts with the forum state, and (2) exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice.'" *Walk Haydel & Assocs. v. Coastal Power Prod. Co.,* 517 F.3d 235, 243 (5th Cir. 2008) (quoted case omitted); *Alpine View Co. Ltd. v. Atlas Copco A.B.,* 205 F.3d 208, 215 (5th Cir. 2000); *see also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476-77, 105 S. Ct. 2174 (1985)

There are two categories of personal jurisdiction: general and specific. General jurisdiction exists "when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic.' " *Mink v. AAAA Development LLC,* 190 F.3d 333, 336 (5th Cir. 1999) (citations omitted); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415 n. 9, 104 S. Ct. 1868 (1984). For specific jurisdiction to exist, the defendant's contacts must be purposefully directed at the forum and the plaintiff's claim must arise out of or be related to those contacts. *See Burger King,* 471 U.S. at 472, 105 S. Ct. 2174. The benchmark of minimum contacts analysis is whether 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Odeh has failed to make a prima facie showing that this court has personal jurisdiction over those Defendants who are not residents of Texas. The First Amended Complaint does not allege that any of the non-resident Defendants ever traveled to Texas or made any contacts with Texas relevant to the claims at issue in this case. Plaintiff argues that two of the Defendants "sent documents via U.S. Mail to Plaintiff in Texas" and, as a result, "could reasonably expect to be haled into the federal court system in Texas . . . ." (Pl's Resp. to Defs' Mot. to Dism. at 26). This argument is wholly unsubstantiated and patently frivolous. Neither Lopez's letter to

9

Defendant Henson with carbon copy to Plaintiff (Pl's Appx. at 34), nor Suter's letter to Plaintiff (Pls' Appx. at 123), without more, meets the *World-Wide* standard.  Personal jurisdiction is appropriate only where contacts result from the defendants' own conduct and create a "substantial connection" with the forum state.  *Burger King,* 471 U.S. at 476-77, 105 S. Ct.  at 2184-85 (allowing jurisdiction where a defendant has deliberately engaged in "significant activities" within a state) (citations omitted).

Here, Defendants Lopez and Suter's contacts with Texas--the mailing of a single letter-- are too attenuated to constitute a substantial connection with the state.  Finding personal jurisdiction based on such limited contacts would impermissibly extend Texas's hold over a nonresident defendant and offend fundamental notions of fairplay and substantial justice. Therefore, the District Court should grant Defendants Fulbruge, Lopez, Jolly, Suter and Atkins' motion to dismiss for lack of personal jurisdiction.

3.  <u>Failure to State a Claim as to the Texas Defendants</u>

A complaint fails to state a claim upon which relief may be granted when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In *Bell Atlantic Corp. v. Twombly,* ___ U.S. ___, 127 S. Ct.  1955, 1974 (2007)*,* the Supreme Court made clear that the *Conley* rule is not "the minimum standard of adequate pleading to govern a complaint's survival."  127 S. Ct. at 1968-69; *see also In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007), *cert. denied*, 128 S. Ct. 1230 (2008).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp.*, 127 S. Ct.  at 1974.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if

doubtful in fact)." *Id.* at 1965 (quotation marks, citations, and footnote omitted).

Since Odeh is proceeding *pro se,* the Court must construe the allegations in the complaint liberally. *Hughes v. Rowe,* 449 U.S. 5, 9 (1980) (per curiam); *Sec. & Exch. Comm'n v. AMX, Int'l, Inc.,* 7 F.3d 71, 75 (5th Cir. 1993) (per curiam). The Court has an obligation to construe a *pro se* plaintiff's briefs more permissively and to make more allowances. *AMX, Int'l, Inc.,* 7 F.3d at 75. "[ *P*]*ro se* litigant[s] [are] subject to less stringent standards than [those] represented by counsel." *Id.* (citing *Hughes v. Rowe,* 449 U.S. at 9).

(a) <u>Res Judicata/Collateral Estoppel</u>

The Texas Defendants argue Plaintiff's claims are barred by res judicata and collateral estoppel because Cause No. 4:06cv225-K involved the same cause of action, against the same Defendants, with the exception of the District Clerk Karen Mitchell, and Judge Carolyn King.[6]

Under the doctrine of res judicata, a "final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *United States v. Davenport,* 484 F.3d 321, 326 (5th Cir.2007) (quoting *Montana v. United States,* 440 U.S. 147, 153, 99 S. Ct. 970, 973 (1979)). This bar prevents litigation of all "issues that were or could have been raised in the [the previous] action." *Id.* (quoting *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S. Ct. 2424, 2428 (1981)). Res judicata applies when the following four-part test is satisfied: "(1) the parties must be either 'identical or in privity'; (2) the judgment in the prior action [must have been] rendered by a court of competent jurisdiction; (3) the prior action must have been concluded to a final judgment on the merits; and (4) the same claim or cause of action [must have been] involved in both actions." *Id.*

---

[6]    *See* Footnote 5, *supra*, which treats Judge King as a Texas resident.

Each of the four elements is present in this case. Plaintiff's own pleadings concede the similarities between this case and No. 4:06cv225-K and the fact that both cases share "the same operative facts." (First Amd. Comp. at 3). The parties in both suits are identical or in privity. All defendants except for two were named in No. 4:06cv225-K. Defendants Mitchell and King, although not a named party in the first suit, are in privity with the remaining defendants based on the circumstances surrounding these suits.[7] Moreover, the final judgments dismissing the prior action with prejudice were on the merits and were rendered by a court of competent jurisdiction.

Odeh presents only one argument opposing the application of the doctrine of res judicata -- namely that the judgment in favor of the Defendants in No. 4:06cv225-K is void due to ineffective service of process. (Pet's Resp. at 14). Specifically, he argues that the Defendants' statement in a Rule 12 motion in No. 4:06cv225-K – that the judgment would not be valid due to ineffective service – bars them from now relying on res judicata and collateral estoppel. (Pet's Resp. at 14 and First Amd. Comp. at 3). Plaintiff's argument is frivolous. As noted above, the judgments filed in the case on or about September 7 and November 3, 2006, dismissed the claims with prejudice, a disposition on the merits.

Likewise Plaintiff's motion to dismiss appeal No. 06-11358 (stemming from the above

---

[7]     For res judicata purposes, privity only exists in one of three circumstances: "(1) where the non-party is the successor in interest to a party's interest in property; (2) where the non-party controlled the prior litigation; and (3) where the non-party's interests were adequately represented by a party to the original suit." *Mea v. General Battery Corp.,* 908 F.2d 1262, 1266 (5th Cir.1990). Privity may exist if a party to the first suit's interests are so closely aligned with those of a non-party as to be his "virtual representative." *Clifton v. Warnoco, Inc.,* 53 F.3d 1280, 1995 WL 295863, at *7 (5th Cir.1995) (unpublished opinion). "Privity is a broad concept, however, and requires a court to look at the surrounding circumstances to determine whether the application of res judicata is justified." *Id.* (citing *Russell v. Sun America Sec. Inc.,* 962 F.2d 1169, 1173 (5th Cir.1992).

judgments) does not render res judicata inapplicable in this case. Contrary to Plaintiff's allegations, the dismissal without prejudice of appeal No. 06-11358 does not in any way set aside the final judgments dismissing No. 4:06cv225-K with prejudice. Therefore, res judicata bars this suit against all remaining defendants.

(b)    <u>Statute of Limitations</u>

Even if not barred by res judicata, the two-year statute of limitations bars Plaintiff's claims against the Texas Defendants except for a handful of claims against Defendant Means (First Amd. Comp. at 7, ¶¶ VIII-XI) and Defendant King (*Id.* at 10, Part F), which accrued after July 13, 2005. *See Brown v. Nations Bank Corp.*, 188 F.3d 579, 590 (5th Cir. 1999); *Pena v. United States*, 157 F.3d 984, 987 (5th Cir.1998). In his response, Plaintiff asserts for the *first time* that his "allegations sound in fraud," which under Texas law is subject to a four-year statute of limitations. (Pl's Response at 24). Each of his numerous civil actions in which he has sought monetary damages against individual defendants, including his First Amended Complaint in this case, is based on alleged constitutional violations pursuant to the Supreme Court's decision in *Bivens v. Six Unknown Named Agents of the Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999 (1971). As set out in *Brown*, *supra*, at 590, the Texas state statute of limitations, which applies to a *Bivens* action is two years. Odeh's reliance on a Texas state cause of action, in an attempt to engraft its arguably longer limitations period to a *Bivens* action, is simply frivolous.

(c)    Immunity

(1)    Judicial Officers and Employees

Judges of this court have addressed and accepted defendant judicial officers' defense of absolute judicial immunity in several of Odeh's previous civil actions.  *See* No. 4:06cv225, findings, conclusions and recommendation at 5-10 filed Aug. 14, 2006, and accepted by District Court on Sep. 7, 2006 (Docs. # 93 and 109).  *See also* No. 4:07cv0270-P, Order at 6-7, filed on October 12, 2007 (Doc. #31).  Quoting from Judge Solis's October 12, 2007 Order in No. 4:07cv0270-P:

> Judges have absolute immunity from suit and the assessment of damages. *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (per curiam); *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005). Judges receive absolute immunity even against accusations that they acted maliciously or corruptly. *Mireles*, 502 U.S. at 11. Absolute immunity extends to all judicial tasks of judges but not to administrative or executive tasks. *See Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993).

The court, not the plaintiff, determines whether acts are judicial in nature.  In determining the judicial nature of an act, courts inquire whether: (1) the act complained of is a normal judicial function; (2) the events occurred in the judge's court or chambers; (3) the controversy centered around a case then pending before the judge, and (4) the confrontation arose directly and immediately out of a visit to the judge in his judicial capacity.  *Brewer v. Blackwell,* 692 F.2d 387, 396-97 (5th Cir. 1982).

In an effort to defeat the well-established doctrine of judicial immunity, Plaintiff characterizes the conduct of each judicial officer defendant as administrative in nature rather than judicial, citing *Forrester v. White*, 484 U.S. 219, 108 S. Ct. 538 (1988).  The facts in *Forrester* are readily distinguishable in that there the conduct of the state judge at issue related to

14

a personnel issue. Odeh's conclusory claim that the conduct of the judge defendants in this case was administrative is insufficient to defeat judicial immunity, particularly where the actions alleged in the amended complaint are those which can be undertaken only by a judge functioning in the judge's judicial capacity.

Similarly, when a clerk of court acts at the direction of an immune judicial officer, such as is set out in those portions of the First Amended Complaint alleging Odeh's claims against Defendants Mitchell and Baggett, the clerk is absolutely immune from an action for damages. *E.g., see Clay v. Allen*, 242 F.3d 679, 682 (5th Cir. 2001).

### (2) Department of Justice Employees

Lastly, Defendants Roper, Henson and Worley are entitled to absolute prosecutorial immunity. Prosecutors are absolutely immune in a civil rights suit for any action taken pursuant to his or her role as a prosecutor in preparing for the initiation of judicial proceedings and in presenting the State's case. *See Kalina v. Fletcher*, 522 U.S. 118, 129, 118 S. Ct. 502, 509 (1997); *Imbler v. Pachtman*, 424 U.S. 409, 430-31, 96 S. Ct. 984, 995 (1976); *Esteves v. Brock*, 106 F.3d 674, 676 (5th Cir. 1997). This immunity has been extended to attorneys defending the government and its officials in civil litigation. *See Murphy v. Morris*, 849 F.2d 1101 (8th Cir. 1998); *McQueen v. United States*, 264 F.Supp.2d 502, 513 (S.D. Tex. 2003) (and out of circuit precedent summarized therein). The conduct, if any, of the government attorneys in connection with Odeh's WCN petition is clearly protected by absolute immunity.

### B. Defendants' Motion for Sanction Pursuant to Rule 11 and the Court's Inherent Authority

Defendants seek a monetary sanction of at least $1,000 against Odeh for violating the provisions of Federal Rule of Civil Procedure 11 by filing his First Amended Complaint (Doc.

#13) in this action,[8] and pursuant to the court's inherent authority to curtail abusive litigation. Plaintiff filed two pleadings (Docs. #85 and 92), which arguably are in response to Defendants' motion, but neither of which responds to the gravamen of the motion or a claim that document 13 does not trespass the requirement of Rule 11(b)(1)-(3).

Access to the courts of the United States is an abiding principle of our system of government. To this end, even a person who cannot pay the filing fee is entitled to proceed *in forma pauperis*. *See* 28 U.S.C. § 1915. However, to protect putative defendants from being subjected to frivolous and malicious lawsuits, and to protect the integrity of the court's process, an action filed by a person proceeding *in forma pauperis* may be dismissed whenever one or more factors listed under § 1915(e)(2)(A) and (B)(i)-(iii) are present.

The fact that a person seeking relief is confined as a prisoner does not bar the individual from seeking relief in a federal court. However, due to the large number of frivolous cases filed by inmates and the repetitive filing of baseless lawsuits filed by a category of inmates – "frequent filers" -- Congress enacted the Prison Litigation Reform Act (PLRA), which in pertinent part imposes on the court an affirmative obligation to screen a complaint filed by a prisoner prior to issuing process and to dismiss the complaint when the action is without merit. *See* 28 U.S.C. § 1915A.

Odeh falls into neither category. In the excessive number of civil actions filed in this court, he has always tendered the required filing fee. Further, although he is a convicted felon, he did not commence his civil litigation odyssey until he was no longer incarcerated as a

_____

[8]     In accordance with the safe harbor provision of Rule 11(c)(2), Defendants' counsel served Odeh with a copy of the Rule 11 motion on February 1, 2008, more than 21 days before filing the motion.

prisoner, as that term is defined in the PLRA.  *See* 28 U.S.C. § 1915(h).  However, as noted in

Defendants' motion, the court is not powerless to act merely because an abusive and vexatious

*pro se* litigant has the where-with-all to pay the required filing fees and obtain service over

persons whom he names as defendants.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-45, 111

S. Ct. 2123, 2132-33 (1991).

Since his criminal prosecution, Odeh has embarked on a long series of frivolous,

contumacious and vexatious actions against federal judicial and department of justice employees

in the Northern District, the Fifth Circuit, and the U.S. Supreme Court.  His abusive tactics and

contumacious conduct in this court and the Fifth Circuit are well documented in the November

28, 2007 order entered by Judge John McBride in "In re Osama 'Sam' Odeh," Miscellaneous

Case No. 4:07-MC-032-A.

In the resolution of the direct appeal stemming from the denial of the WCN petition, the

Fifth Circuit imposed both a monetary sanction against Odeh and instructed  the clerk to "accept

no further filings, including any attempt at further appellate review, in this or any appeals of

original petitions filed in the future.  If Odeh attempts to file a notice of appeal or original

proceeding in this court the clerk will docket the filing for administrative purposes only."  *See*

No. 05-10764 (Aug. 8, 2006 Order).

More recently, on April 18, 2008, Judge Means extended the above Fifth Circuit sanction

to bar Odeh from filing in his prior criminal case a document entitled Rule 60(b) Motion to

Vacate, along with a separate Motion for Leave to File Renewed Coram Nobis Motion.  *See* No.

4:97-cr-105-Y.  The court warned Odeh that the filing of any further motions, petition or request

for relief in his criminal case "will result in contempt proceedings being brought against him,

which may result in additional monetary sanctions or imprisonment." *Id.* (Apr. 18, 2008 Ord. at 2).

The court possesses the inherent power "to protect the efficient and orderly administration of justice and . . . to command respect for the court's orders, judgments, procedures, and authority." *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993). Included in such inherent power is "the power to levy sanctions in response to abusive litigation practices." *Id.* Sanctions may be appropriate when a *pro se* litigant has a history of submitting multiple frivolous claims. *See* Fed. R. Civ. P. 11; *Mendoza*, 989 F.2d 191, 195-97 (5th Cir. 1993) . *Pro se* litigants have "no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986). It is well established that sanctions are appropriate when a *pro se* litigant has a history of submitting numerous actions that are frivolous, malicious or fail to state a claim. *See* Fed. R. Civ. P. 11; *Stelly v. Commissioner of Internal Revenue*, 804 F.2d 868, 870-71 (5th Cir. 1986) ($2,000 sanction on *pro se* litigant and preclusion from further filings were appropriate); *Mendoza v. Lynaugh*, 989 F.2d at 195-96 (discussing the many instances in which the Fifth Circuit has approved the imposition of Rule 11 sanctions on pro se litigants); *Smith v. McCleod*, 946 F.2d 417, 418 (5th Cir. 1991) ("Time and again, we have warned prisoners that they may not abuse the court system by the filing of repetitive groundless suits."); *Mayfield v. Klevenhagen*, 941 F.2d 346, 348 (5th Cir. 1991) ("By signing his complaint, [the pro se plaintiff] certified that, after a reasonable inquiry, to the best of his knowledge, information and belief, the matters contained in his complaint were well grounded in fact and warranted by existing laws.").

Odeh has filed seven frivolous, abusive actions in this court – none of which have resulted in a decision in his favor. In the present case, he has continued his abusive tactics and disregard for the judicial process. He persisted with the filing of a baseless, frivolous complaint raising claims that had previously been litigated. He also submitted numerous motions, the majority of which clearly had no basis in law, and which imposed an unnecessary burden on this court and the clerk's office.

For the reasons set out above with respect to Defendants' motion to dismiss, the present action is frivolous and Odeh's First Amended Complaint violates the requirements of Rule 11(b)(1)-(3). As recounted in Judge McBryde's order, *supra*, the threats and sanctions imposed in other actions by this court and by the Fifth Circuit have been totally ignored by Plaintiff. Accordingly, Defendants' motion should be granted and under the Court's inherent authority a substantial monetary sanction should be imposed against Osama "Sam" Odeh and he should be barred from filing any subsequent action in this court or in any other district court within the Fifth Circuit, arising out of or relating in any manner to his criminal prosecution in No. 4:97cr105-Y unless he has first paid the monetary sanction and has obtained leave from a judge of this court to file a complaint. *See Stelly v. C.I.R.*, *supra*, and *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1999).

C.    Plaintiff's Motions

1.    Motion for Temporary Restraining Order and Preliminary Injunction (Doc. #39)

Because Defendants are entitled to dismissal of Plaintiff's First Amended Complaint, Odeh's motion for injunctive relief is patently without merit.

2.    Requests for Default Judgment and for Entry of Default (Docs. #42-43)

In these pleadings Odeh seeks the entry of default judgments against certain Defendants named in his First Amended Complaint. A condition precedent to the entry of a valid enforceable default judgment is evidence of effective service on the defendant against whom the default judgment is sought. Absent proper service of process, personal jurisdiction over a defendant would be lacking and any default judgment would be void. *See Rogers v. Hartford Life and Accident Ins. Co.*, 167 F.3d 933, 940 (5th Cir. 1999). Nor would a showing of effective service standing alone permit a court to exercise personal jurisdiction over a defendant. In addition the court would be required to have subject matter jurisdiction over the claim asserted. Finally, default judgments are not favored in federal court.

At the time Plaintiffs' motions were filed, service had not been effected on any defendant in accordance with the provisions of Rule 4, Fed. R. Civ. P. In their motion to dismiss, filed on February 1, 2008, most of the Defendants cited Rule 12(b)(5), as a basis for dismissing Plaintiff's live complaint. Although the absence of effective service as of February 1, 2008, was not the fault of Odeh, and even though service was subsequently effected in accordance with the provisions of Rule 4, Plaintiff's requests should be denied as moot because Defendants' motion to dismiss should be granted.

3.      Motion for Leave to File Second Amended Complaint (Doc. #95)

Odeh's motion to file a second amended complaint was filed on March 20, 2008, subsequent to Defendants' motion to dismiss .

Rule 15(a)(1), Federal Rules of Civil Procedure, permits a party to amend once as a matter of course before being served with a response pleadings. All further amendments require consent of the opposing parties or leave of court. FED. R. CIV. P. 15(a)(2). In the present case,

Defendants object to granting the leave which Plaintiff requests. (Doc. #100).

Although leave to amend is to be freely given when justice so requires, denial of a motion for leave to amend is appropriate when the proposed amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (futility of amendment is adequate justification to refuse to grant leave to amend); *DeLoach v. Woodley*, 405 F.2d 496, 497 (5th Cir. 1968). The decision whether to grant a motion to amend is generally left to the sound discretion of the district court. *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004).

Although Odeh's proposed Second Amended Complaint makes superficial changes in the language which appears in his First Amended Complaint, in the main it is a mere regurgitation of his claims repeatedly asserted in the civil actions he has filed in this court. His proposed amended pleading does nothing to correct the violations of Rule 11 present in his live complaint, nor to demonstrate the presence of subject matter jurisdiction or establish personal jurisdiction over non-Texas residents, or defeat absolute immunity to which the remaining Defendants are entitled. Therefore, granting Plaintiff's motion would be a futile gesture and his motion for leave to amend should be denied.

<u>RECOMMENDATION</u>:

For the foregoing reasons, it is recommended that Defendants' motion to dismiss be granted as follows:

(1) That Plaintiff's First Amended complaint be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, or in the alternative

(2) That Plaintiff's First Amended Complaint be dismissed against Defendants Fulburge, Lopez, Jolly, Suter and Atkins pursuant to Rule 12(b)(2) for lack of personal jurisdiction, and

(3) That Plaintiff's First Amended Complaint be dismissed against Defendants Mitchell, Fish, Means, Baggett, King, Bleil, Roper, Henson and Worley pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted based upon said Defendants' absolute immunity to claims for monetary damages or in the alternative based upon res judicata and collateral estoppel.[9]

It is further recommended that the District Court grant Defendants' motion for sanctions and order Osama Odeh to appear on a date certain to show cause why monetary sanctions and other non-monetary sanctions should not be imposed pursuant to Rule 11(c)(2)-(4) and the court's inherent authority.

It is further recommended that the District Court deny Plaintiff's motion for temporary restraining order and preliminary injunction, Plaintiff's requests for default judgment and for entry of default, and Plaintiff's motion for leave to file Second Amended Complaint because each of the said motions is moot.

---

[9]Limitations also bars Odeh's claims against the Texas resident defendants except for Defendants Means and King. *See* pp. 13-14, *supra.*

The referral of this case for pre-trial management should be TERMED

A copy of this recommendation will be transmitted to Plaintiff and Counsel for Defendants.

Signed this 2nd day of September, 2008.


_____
WM. F. SANDERSON, JR.
UNITED STATES MAGISTRATE JUDGE



NOTICE


In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within ten days after being served with a copy of this recommendation.  Pursuant to *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*), a party's failure to file written objections to these proposed findings of fact and conclusions of law within such ten-day period may bar a *de novo* determination by the district judge of any finding of fact or conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and conclusions of law accepted by the district court.